## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| WENDY ANDERSON-BELCHER,<br>    *Plaintiff,*<br><br>v.<br><br>NOVO NORDISK A/S, NOVO NORDISK INC., and ELI LILLY AND COMPANY,<br>    *Defendants.* | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-4013 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

-----------------------------------------------------------------------------------------------------------------

Plaintiff files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections and privileges, and obligations of that Direct Filing Order and other Orders of the Court.  Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the New Mexico District Court as Plaintiff's designated venue ("Original Venue").  Plaintiff makes this selection based upon one (or more) of the following factors (check the appropriate box(es)):

X Plaintiff currently resides in Santa Fe, NM (City/State).

X Plaintiff purchased and used Defendant(s)' products in Santa Fe, NM (City/State).

__ The Original Venue is a judicial district in which Defendant _____ resides, and all Defendants are residents of the State in which the district is located (28 USC § 1391(b)(1)).

X The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically (28 USC § 1391(b)(2)):
New Mexico District Court.

__ There is no district in which an action may otherwise be brought under 28 USC § 1391, and the Original Venue is a judicial district in which Defendant _____ is subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)).

__ Other reason (please explain): _____.

## NATURE OF THE CASE

1.      This is an action for damages suffered by Plaintiff, WENDY ANDERSON-BELCHER, who was severely injured as a result of Plaintiff's use of Ozempic and Trulicity, injectable prescription medications that are used to control blood sugar and to reduce cardiovascular risk in adults with type 2 diabetes.

2.      Ozempic is also known as semaglutide.

3.      Trulicity is also known as dulaglutide.

4.      Ozempic and Trulicity work by stimulating insulin production and reducing glucose production in the liver helping to lower blood sugar levels.

5.      Ozempic and Trulicity belong to a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

6.      Defendants acknowledge that gastrointestinal events are well known side effects of the GLP-1RA class of drugs.[1] However, Defendants have downplayed the severity of the gastrointestinal events caused by its GLP-1RAs, never, for example, warning of the risk of gastroparesis ("paralyzed stomach") and its sequalae.

7.      Gastroparesis is a condition that affects normal muscle movement in the stomach. Ordinarily, strong muscular contractions propel food through the digestive tract. However, in a person suffering from gastroparesis, the stomach's motility is slowed down or does not work at

---

[1] *See, e.g.*, CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (visited on 9/26/23). Because the risk of gastrointestinal injuries, including gastroparesis, is common to the entire GLP-1RA class of drugs, any published literature regarding the association between gastroparesis and *any* GLP-1RA (such as tirzepatide (marketed as Mounjaro and Zepbound), exenatide (marketed as Byetta, Bydureon, and Bydureon BCise), liraglutide (marketed as Saxenda, Victoza, and as combination drug Xultophy 100/3.6), albiglutide (marketed as Tanzeum), dulaglutide (marketed as Trulicity), lixisenatide (marketed as Adlyxin and as combination drug Soliqua 100/33), and semaglutide (marketed as Ozempic, Wegovy, and Rybelsus)) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis associated with these drugs.

all, preventing the stomach from emptying properly. Gastroparesis can interfere with normal digestion and cause nausea, vomiting (including vomiting of undigested food), abdominal pain, abdominal bloating, severe dehydration, a feeling of fullness after eating just a few bites, undigested food hardening and remaining in the stomach, acid reflux, changes in blood sugar levels, lack of appetite, weight loss, malnutrition, and a decreased quality of life. There is no cure for gastroparesis.[2]

## PARTY PLAINTIFF

8.      Plaintiff, WENDY ANDERSON-BELCHER, is a citizen of the United States, and is a resident of the State of New Mexico.

9.      Plaintiff is 71 years old.

10.     Plaintiff used Ozempic from approximately 6/24/2020 to 09/28/2021.

11.     Plaintiff used Trulicity from approximately 1/1/2017 to 03/01/2019.

12.     Plaintiff's physician(s) ("prescribing physician(s)") prescribed the Ozempic and Trulicity that Plaintiff used.

13.     As a result of using Ozempic and Trulicity, Plaintiff was caused to suffer from gastroparesis and its sequelae and, as a result, sustained severe and permanent personal injuries, pain, suffering, and emotional distress, and incurred medical expenses.

14.     As a result of using Ozempic and Trulicity, Plaintiff was caused to suffer from gastroparesis and its sequelae, which resulted in, for example, cyclical vomiting.

## PARTY DEFENDANTS

15.     Novo Nordisk Inc. is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

---

[2] *Gastroparesis*, Mayo Clinic (June 11, 2022), available at https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (visited on 9/26/23).

16.     Defendant Novo Nordisk A/S is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

17.     Defendants Novo Nordisk Inc. and Novo Nordisk A/S are referred to collectively herein as "Novo Nordisk."

18.     Novo Nordisk designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed Ozempic. Alternatively, Novo Nordisk has acquired the entity/entities who designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and is, thus, the successor to such entity/entities.

19.     Defendant Eli Lilly and Company ("Eli Lilly") is an Indiana corporation with a principal place of business at 893 S. Delaware St., Indianapolis, Indiana.

20.     Eli Lilly designed, researched, manufactured, tested, labeled, advertised, promoted, marketed, sold, and/or distributed Trulicity and is identified on its label.[3]

21.     Novo Nordisk and Eli Lilly are collectively referred to herein as "Defendants".

## FACTUAL BACKGROUND

.   **FDA's Approval of Ozempic**

22.     On December 5, 2016, Novo Nordisk announced submission of a new drug application (NDA) to the FDA for regulatory approval of once-weekly injectable semaglutide, a new glucagon-like peptide-1 (GLP-1) medication for treatment of type 2 diabetes. In the announcement, Novo Nordisk represented that in clinical trials "once-weekly semaglutide had a safe and well tolerated profile with the most common adverse event being nausea."[4]

---

[3] *See* Trulicity Label (revised Nov. 2022), available at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/125469s051lbl.pdf (last visited Nov. 15, 2023).
[4] Novo Nordisk, *Novo Nordisk files for regulatory approval of once-weekly semaglutide in the US and EU for the treatment of type 2 diabetes* (Dec. 5, 2016), available at
https://ml.globenewswire.com/Resource/Download/d2f719e1-d69f-4918-ae7e-48fc6b731183 (visited on 9/26/23).

23.     On December 5, 2016, Defendant Novo Nordisk Inc. submitted NDA 209637, requesting that the FDA grant it approval to market and sell Ozempic (semaglutide) 0.5 mg or 1 mg injection in the United States as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus. On December 5, 2017, the FDA approved NDA 209637.[5]

24.     On March 20, 2019, Defendant Novo Nordisk Inc. submitted supplemental new drug application (sNDA) 209637/S-003 for Ozempic (semaglutide) 0.5 mg or 1 mg injection, requesting approval to expand its marketing of Ozempic by adding an indication to reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes and established cardiovascular disease.[6] On January 16, 2020, the FDA approved sNDA 209637/S-003.[7]

25.     On May 28, 2021, Defendant Novo Nordisk Inc. submitted sNDA 209637/S-009, requesting approval for a higher 2 mg dose of Ozempic (semaglutide) injection. On March 28, 2022, the FDA approved sNDA 209637/S-009.[8]

.     **FDA's Approval of Trulicity**

26.     On September 18, 2014, the FDA approved Eli Lilly's Biologics License Application ("BLA") for dulaglutide "as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus" to be marketed as Trulicity in "single dose pre-filled syringes and pre-filled pens." As initially approved, the recommended dose for Trulicity was

---

[5] FDA Approval Letter for NDA 209637 (Ozempic), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2017/209637s000ltr.pdf (visited on 9/26/23).
[6] *Novo Nordisk files for US FDA approval of oral semaglutide for blood sugar control and cardiovascular risk reduction in adults with type 2 diabetes*, Cision PR Newswire (March 20, 2019), available at
https://www.prnewswire.com/news-releases/novo-nordisk-files-for-us-fda-approval-of-oral-semaglutide-for-blood-sugar-control-and-cardiovascular-risk-reduction-in-adults-with-type-2-diabetes-300815668.html (visited on 9/26/23).
[7] FDA Supplement Approval Letter for NDA 209637/A-003 (Ozempic), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/209637Orig1s003ltr.pdf (visited on 9/26/23).
[8] FDA Supplement Approval Letter for NDA 209637/S-009 (Ozempic), available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/209637Orig1s009ltr.pdf (visited on 9/26/23).

1.5 mg per week.[9]

27.    On April 19, 2019, Eli Lilly submitted supplemental BLA 125469/S-033, requesting approval to expand its marketing of Trulicity by adding an indication for reduction of major cardiovascular events in adults with type 2 diabetes. On February 21, 2020, the FDA approved the request.[10]

28.    On November 4, 2019, Eli Lilly submitted BLA 125469/S-036, seeking approval for higher doses (3 mg per week and 4.5 per week) of Trulicity. On September 3, 2020, the FDA approved that request.[11]

29.    On May 17, 2022, Eli Lilly submitted BLA 125469/S-051, seeking to add an indication for a new patient population: "pediatric patients 10 years of age and older with type 2 diabetes mellitus." On November 17, 2022, the FDA approved the drug for pediatric use.[12]

.    **Novo Nordisk's Marketing and Promotion of Ozempic**

30.    On December 5, 2017, Novo Nordisk announced the FDA's approval of Ozempic (semaglutide) 0.5 mg or 1 mg injection in a press release stating that: "Novo Nordisk expects to launch OZEMPIC® in the U.S. in Q1 2018, with a goal of ensuring broad insurance coverage and patient access to the product. OZEMPIC® will be priced at parity to current market-leading weekly GLP-1RAs and will be offered with a savings card program to reduce co-pays for eligible commercially-insured patients. Additionally, as part of the access strategy, Novo Nordisk is working with appropriate health insurance providers to establish innovative contracting

---

[9]    FDA Approval Letter for BLA 125469/0 (Sept. 18, 2014), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2014/125469Orig1s000ltr.pdf (last visited Nov. 8, 2023).
[10]    FDA Approval Letter for BLA 125469/S-033 (Feb. 21, 2020), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2020/125469Orig1s033ltr.pdf (last visited Nov. 8, 2023).
[11]    See News Release: FDA approves additional doses of Trulicity (dulaglutide) for the treatment of type 2 diabetes, Eli Lilly (Sept. 3, 2020) available at https://investor.lilly.com/news-releases/news-release-details/fda-approves-additional-doses-trulicityr-dulaglutide-treatment (last visited Nov.15, 2023).
[12]    FDA Approval Letter for BLA 125469/S-051 (Nov. 17, 2022), available at https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/125469Orig1s051ltr.pdf (last visited Nov. 15, 2023).

solutions."[13]

31.     On February 5, 2018, Novo Nordisk announced that it had started selling Ozempic in the United States and touted the medication as a "new treatment option[]" that "addresses the concerns and needs of people with diabetes[.]" Novo Nordisk offered an "Instant Savings Card to reduce co-pays to as low as $25 per prescription fill for up to two years."[14]

32.     Novo Nordisk promoted the safety and sale of Ozempic in the United States on its websites, in press releases, through in-person presentations, through the drug's label, in print materials, on social media, and through other public outlets.

33.     On July 30, 2018, Novo Nordisk launched its first television ad for Ozempic, to the tune of the 1970s hit pop song "Magic" by Pilot, wherein Novo Nordisk advertised that "adults lost on average up to 12 pounds" when taking Ozempic, even though it is not indicated for weight loss.[15]

34.     On March 28, 2022, Novo Nordisk announced the FDA's approval of sNDA 209637/S-009 for a higher 2 mg dose of Ozempic (semaglutide) injection. In the press release, Novo Nordisk represented Ozempic as having "proven safety" and advertised that "plus it can help many patients lose some weight."[16]

35.     Since 2018, Novo Nordisk has spent more than $884,000,000 on television ads in

---

[13] *Novo Nordisk Receives FDA Approval of OZEMPIC® (semaglutide) Injection For the Treatment of Adults with Type 2 Diabetes*, Cision PR Newswire (December 05, 2017), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-ozempic-semaglutide-injection-for-the-treatment-of-adults-with-type-2-diabetes-300567052.html (visited on 9/26/23).
[14] *Novo Nordisk Launches Ozempic® and Fiasp®, Expanding Treatment Options for Adults with Diabetes*, Cision PR Newswire (February 05, 2018), available at https://www.prnewswire.com/news-releases/novo-nordisk-launches-ozempic-and-fiasp-expanding-treatment-options-for-adults-with-diabetes-300592808.html (visited on 9/26/23).
[15] *Ozempic TV Spot, 'Oh!'*, iSpot.tv (July 30, 2018), available at https://www.ispot.tv/ad/d6Xz/ozempic-oh (visited on 9/26/23).
[16] *Novo Nordisk receives FDA approval of higher-dose Ozempic® 2 mg providing increased glycemic control for adults with type 2 diabetes*, Cision PR Newswire (March 28, 2022), available at https://www.prnewswire.com/news-releases/novo-nordisk-receives-fda-approval-of-higher-dose-ozempic-2-mg-providing-increased-glycemic-control-for-adults-with-type-2-diabetes-301512209.html (visited on 10/16/23).

the United States to promote its semaglutide drugs (Ozempic, Wegovy and Rybelsus) with the majority of the spending allocated specifically to advertising Ozempic.[17]

36.     In 2022, Novo Nordisk spent $180.2 million on Ozempic ads, including an estimated $157 million on national television ads for Ozempic, making Ozempic the sixth most advertised drug that year. As a result of its GLP-1RA treatments, including Ozempic, Novo Nordisk forecasts sales growth of 13% to 19% for 2023.[18]

37.     On July 6, 2023, it was reported that Novo Nordisk had spent $11 million in 2022 on food and travel for doctors "as part of its push to promote Ozempic and other weight loss-inducing diabetes drugs."[19] The spending bought more than 457,000 meals for almost 12,000 doctors while also flying doctors to places like London, Paris, Orlando, and Honolulu.[20]

38.     In an article published on July 21, 2023, the President and CEO of the Alliance of Community Health Plans described Novo Nordisk's spending on meals for doctors as "outrageous" and suggested that the millions Novo Nordisk spent marketing its drugs to prescribers would be better used furthering research about potential side effects and long-term effectiveness. The author cited research published in the spring of 2023 showing an increased risk of intestinal obstruction as a result of using GLP-1RA drugs.[21]

---

[17] Ritzau, *Novo Nordisk runs TV ads in US for multimillion-dollar sum*, MedWatch (April 26, 2023), available at https://medwatch.com/News/Pharma___Biotech/article15680727.ece (visited on 9/26/23).
[18] Adams B, Fierce Pharma, *The top 10 pharma drug ad spenders for 2022*, https://www.fiercepharma.com/special-reports/top-10-pharma-drug-brand-ad-spenders-2022 (visited on 9/26/23).
[19] Nicolas Florko, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), available at https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/ (visited on 9/26/23).
[20] Nicolas Florko, *Novo Nordisk bought prescribers over 450,000 meals and snacks to promote drugs like Ozempic*, National Center for Health Research (July 5, 2023), available at https://www.center4research.org/novo-nordisk-gave-doctors-450000-meals-ozempic/ (visited on 9/26/23).
[21] Erin Prater*, Ozempic manufacturer Novo Nordisk spent $11 million last year 'wining and dining' doctors. Experts slam the move as a breach of doctor-patient trust,* Fortune Well (July 21, 2023), available at https://fortune.com/well/2023/07/21/ozempic-novo-nordisk-meals-travel-prescribing-doctors/ (visited on 9/26/23); *see also* Erin Prater, *Weight-loss drugs like Ozempic and Wegovy may put certain people at risk of serious complications, researchers warn*, Fortune Well (March 7, 2023), available at

39.     As a result of Novo Nordisk's advertising and promotion efforts, Ozempic has been widely used throughout the United States. The number of prescriptions filled reached an all-time high of 373,000 in one week in February of 2023, with more than half of those being new prescriptions.[22] In June 2023, it was reported that new prescriptions for Ozempic had surged by 140 percent from the prior year.[23]

40.     On TikTok, the hashtag #Ozempic had 273 million views as of November 22, 2022,[24] and currently has over 1.3 billion views.[25]

41.     On June 15, 2023, NBC News published a report about the "thousands of weight-loss ads on social media for the drugs Ozempic and Trulicity." While many of those ads were found to be from online pharmacies, medical spas, and diet clinics, as of June of 2023, Novo Nordisk was still running online social-media ads for its semaglutide products, despite claiming in May that it would stop running ads due to a shortage of the drug.[26]

42.     On July 10, 2023, a global media company declared Ozempic as "2023's buzziest drug" and one of the "Hottest Brands, disrupting U.S. culture and industry."[27]

43.     At all relevant times, Novo Nordisk was in the business of and did design, research,

---

https://fortune.com/well/2023/03/07/ozempic-wegovy-elevated-risk-intestinal-obstruction-later-type-2-diabetes-weight-loss-drug/ (visited on 10/18/23).

[22] Choi A, Vu H, *Ozempic prescriptions can be easy to get online. Its popularity for weight loss is hurting those who need it most*, CNN (March 17, 2023), available at https://www.cnn.com/2023/03/17/health/ozempic-shortage-tiktok-telehealth/ (visited on 9/26/23).

[23] Gilbert D, *Insurers clamping down on doctors who prescribe Ozempic for weight loss*, The Washington Post (June 12, 2023), available at https://www.washingtonpost.com/business/2023/06/11/weight-loss-ozempic-wegovy-insurance/ (visited on 9/26/23).

[24] Blum D, *What is Ozempic and Why Is It Getting So Much Attention?*, The New York Times (published Nov. 22, 2022, updated July 24, 2023), available at https://www.nytimes.com/2022/11/22/well/ozempic-diabetes-weight-loss.html (visited on 9/26/23).

[25] https://www.tiktok.com/tag/ozempic (visited on 11/14/23).

[26] Ingram D, *More than 4,000 ads for Ozempic-style drugs found running on Instagram and Facebook*, NBC News (June 15, 2023), available at https://www.nbcnews.com/tech/internet/ozempic-weight-loss-drug-ads-instagram-wegovy-semaglutide-rcna88602 (visited on 9/26/23).

[27] Bain P, *Ozempic was 2023's Buzziest Drug*, AdAge (July 10, 2023), available at https://adage.com/article/special-report-hottest-brands/ozempic-hottest-brands-most-popular-marketing-2023/2500571 (visited on 9/26/23).

manufacture, test, advertise, promote, market, sell, and/or distribute Ozempic.

**.    Eli Lilly's Marketing and Promotion of Trulicity**

44.    At all relevant times, Eli Lilly was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and/or distribute Trulicity.

45.    Trulicity has been the top earning product for Eli Lilly for the past several years, with the drug bringing in more than $5.6 billion in revenue in 2022 in the United States alone. The demand for Trulicity is largely driven by Eli Lilly's advertising, which costs the company more than $1 billion annually. Eli Lilly advertises Trulicity through its websites, press releases, in-person presentations, the drug's label, print materials, social media, and other public outlets. Eli Lilly's advertisements tout the health benefits of Trulicity, without warning of the risk of gastroparesis or its sequelae.[28]

46.    Upon the approval of Trulicity on September 18, 2014, an Eli Lilly spokesperson indicated that Trulicity "has demonstrated proven glycemic control, only has to be taken once weekly, and comes in an easy-to-use pen."[29] Although a press release accompanying Trulicity's approval acknowledged that "nausea," "vomiting" abdominal pain" were among the most common adverse reactions reported with use of Trulicity, the press release did not indicate that those common adverse reactions were symptoms of gastroparesis or warn of the risk of gastroparesis or its sequelae. Instead, the press release merely indicated that "Trulicity has not been studied in patients with … [pre-existing] gastroparesis."[30]

---

[28] Eli Lilly and Company 2022 Annual Report, available at https://investor.lilly.com/static-files/2f9b7bb1-f955-448d-baa2-c4343d39ee62 (last visited Nov. 15, 2023).
[29] *Lilly's Trulicity (dulaglutide) Now Available in U.S. Pharmacies,* PR Newswire (Nov. 10, 2014), available at https://www.prnewswire.com/news-releases/lillys-trulicity-dulaglutide-now-available-in-us-pharmacies-282138401.html (last visited Nov. 15, 2023).
[30] *News Release: FDA Approves Trulicity (dulaglutide), Lilly's Once-Weekly Therapy for Adults with Type 2 Diabetes,* Eli Lilly (Sept. 18, 2014), available at https://investor.lilly.com/news-releases/news-release-details/fda-approves-trulicitytm-dulaglutide-lillys-once-weekly-therapy (last visited Nov. 15, 2023).

47.    Following the FDA's approval of Trulicity in September 2014, Eli Lilly launched its direct-to-consumer ad campaign in 2015, with print and digital ads first appearing in September 2015 and the first Trulicity television ad launching on October 19, 2015.[31]

48.    On November 5, 2018, in a press release announcing Trulicity's "superiority in reduction of cardiovascular events," as shown by an internal clinical trial, Eli Lilly acknowledged that "[t]he safety profile of Trulicity … was generally consistent with the GLP-1 receptor agonist class." Although the press release included a section titled "Important Safety Information for Trulicity," the press release did not warn that Trulicity can cause gastroparesis or its sequelae.[32]

49.    In a February 21, 2020, press release announcing Trulicity's new indication for reduction of cardiovascular risk, Eli Lilly touted Trulicity's ability to reduce the risk of major adverse cardiovascular events, including heart attack and stroke, even in adults without established cardiovascular disease.[33] In the press release, Eli Lilly again indicated that "Trulicity's safety profile [is] consistent with the GLP-1 receptor agonist (RA) class," but despite warning of certain risks, the press release did not warn of the risk of gastroparesis, or its sequelae, associated with GLP-1RAs.

50.    When announcing the approval of higher weekly doses of Trulicity in September 2020, Eli Lilly's press release indicated that "with the 3.0 and 4.5 [mg] doses available, people with type 2 diabetes who use Trulicity can benefit from additional A1C and weight loss as their

---

[31] Beth Snyder Bulik, *One year after FDA nod, Eli Lilly's Trulicity launches first consumer campaign,* Fierce Pharma (Oct. 19, 2015) https://www.fiercepharma.com/dtc-advertising/one-year-after-fda-nod-eli-lilly-s-trulicity-launches-first-consumer-campaign (last visited Nov. 15, 2023).
[32] *News Release: Trulicity (dulaglutide) demonstrates superiority in reduction of cardiovascular events for broad range of people with type 2 diabetes,* Eli Lilly (Nov. 5, 2018), available at https://investor.lilly.com/news-releases/news-release-details/trulicityr-dulaglutide-demonstrates-superiority-reduction (last visited Nov. 15, 2023).
[33] *News Release: Trulicity (dulaglutide) is the first and only type 2 diabetes medicine approved to reduce cardiovascular events in adults with and without established cardiovascular disease,* Eli Lilly (Feb. 21, 2020), available at https://investor.lilly.com/news-releases/news-release-details/trulicityr-dulaglutide-first-and-only-type-2-diabetes-medicine (last visited Nov. 15, 2023).

1

condition progresses."[34] Despite touting the off-label use of Trulicity for "weight loss," Eli Lilly did not warn of the associated risk of gastroparesis or its sequelae.

51.    Around this same time, Robert H. Schmerling, MD, Senior Faculty Editor and Editorial Advisory Board Member at Harvard Health Publishing commented that the actors in the television ads for Trulicity appeared notably thinner than the typical person with type 2 diabetes.[35]

52.    In Summer 2021, in conjunction with Eli Lilly's sponsorship of the rescheduled Summer Olympics, Eli Lilly ran extensive television ads for Trulicity featuring Olympic gymnast Laurie Hernandez and her father, who has type 2 diabetes. The ad indicates that treatment with Trulicity is the "right choice" for people with type 2 diabetes but does not mention or warn about gastroparesis or its sequelae.[36]

53.    In a similar January 2022 television ad featuring Olympic figure skater Madison Chock and her mother, Eli Lilly again indicated that Trulicity was the "right choice" for people with type 2 diabetes but did not warn that Trulicity can cause gastroparesis or its sequelae.[37]

54.    In January 2022, the FDA determined that Eli Lilly's "10,800 Minutes" Instagram ad for Trulicity "ma[de] false or misleading claims and representations about the benefits and risks of Trulicity" and that the ad elicits "a misleading impression regarding the safety and effectiveness of Trulicity" that "minimizes the risks associated with the use of Trulicity." In response to a letter

---

[34] *News Release: FDA approves additional doses of Trulicity (dulaglutide) for the treatment of type 2 diabetes,* Eli Lilly (Sept. 3, 2020) available at https://investor.lilly.com/news-releases/news-release-details/fda-approves-additional-doses-trulicityr-dulaglutide-treatment (last visited Nov.15, 2023).

[35] Robert H. Schmerling, MD, *Harvard Health Ad Watch: A feel-good message about a diabetes drug,* Harvard Health Publishing (Sept. 18, 2020), available at https://www.health.harvard.edu/blog/harvard-health-ad-watch-a-feel-good-message-about-a-diabetes-drug-2020091620961 (last visited Nov. 15, 2023).

[36] *See* Trulicity TV advertisement, available at https://www.youtube.com/watch?v=eVA1vYV980w (last visited Nov. 15, 2023); Beth Snyder Bulik, *Lilly warms up for Olympics with Team USA athletes in ads for Trulicity, Emgality and Verzenio,* Fierce Pharma (July 7, 2021), available at https://www.fiercepharma.com/marketing/lilly-warms-up-for-olympics-team-usa-athletes-ads-for-trulicity-emgality-and-verzenio (last visited Nov. 15, 2023).

[37] *See* Trulicity TV advertisement (Madison Chock), available at https://www.ispot.tv/ad/q3ii/trulicity-shes-got-this-featuring-madison-chock (last visited Nov. 15, 2023).

from the FDA, Eli Lilly temporarily removed the Trulicity Instagram account.[38] The FDA citation is emblematic of Eli Lilly's willingness to mislead and omit important information, focusing on profit over safety, specifically with respect to Trulicity.

55.    That same month, it was reported that Trulicity was the most advertised drug on United States television, with Eli Lilly spending an estimated $36.2 million on national television advertisements in January 2022 alone.[39]

56.    In another Trulicity television ad that premiered in February 2022, Eli Lilly boasted that Trulicity "can help you lose up to ten pounds," a use for which Trulicity is not indicated, but did not mention the risk of gastroparesis or its sequelae.[40]

57.    Similarly, Eli Lilly's promotional website for Trulicity (Trulicity.com) states that people taking Trulicity "lost up to 10 lbs," without disclosing the risk of gastroparesis and cyclical vomiting.[41]

58.    By the end of 2022, the market was experiencing shortages of Trulicity due to "high demand" driven by Eli Lilly's advertising.[42]

.    **The Medical Literature and Clinical Trials Gave Defendants Notice of Gastroparesis Being Causally Associated with GLP-1RAs**

59.    As previously noted, Ozempic (semaglutide) and Trulicity (dulaglutide) belong to

---

[38] Fraiser Kansteiner, *FDA chides Eli Lilly for 2nd misleading ad in 2 months, this time for diabetes blockbuster Trulicity,* Fierce Pharma (Jan. 25, 2022), available at https://www.fiercepharma.com/marketing/fda-chides-lilly-for-second-misleading-ad-2-months-time-for-diabetes-med-trulicity (last visited Nov. 15, 2023).
[39] Ben Adams, *Eli Lilly's Trulicity dethrones Dupixent, taking January's TV ad spending crown,* Fierce Pharma (Feb. 4, 2022), available at https://www.fiercepharma.com/marketing/sanofi-regeneron-s-dupixent-de-throned-as-lilly-s-trulicity-takes-crown-january-s-biggest (last visited Nov. 15, 2023).
[40] Trulicity TV advertisement ("Father-Son"), available at https://www.ispot.tv/ad/q4Kl/trulicity-father-son (last visited Nov. 15, 2023).
[41] *See* https://www.trulicity.com/what-is-trulicity#what-is-trulicity.
[42] https://www.fiercepharma.com/manufacturing/after-novos-wegovy-supply-woes-lillys-would-be-obesity-rival-tirzepatide-runs-scarce

a class of drugs called GLP-1 receptor agonists ("GLP-1RAs").

60.     Medications within the GLP-1RA class of drugs mimic the activities of physiologic GLP-1, which is a gut hormone that activates the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon.[43]

61.     Because the risk of gastroparesis is common to the entire class of drugs, any published literature regarding the association between gastroparesis and *any* GLP-1RA (such as tirzepatide, exenatide, liraglutide, albiglutide, dulaglutide, lixisenatide, and semaglutide) should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis associated with these drugs.

62.     In addition to pancreatic effects, the published medical literature shows that GLP-1 slows gastric emptying. As early as 2010, a study published in The Journal of Clinical Endocrinology & Metabolism indicated this effect.[44]

63.     Defendants knew or should have known of this risk of gastroparesis from the clinical trials, medical literature, and case reports.

64.     A 2016 trial funded by Novo Nordisk measuring semaglutide and cardiovascular outcomes in patients with type 2 diabetes found more gastrointestinal disorders in the semaglutide group than in the placebo group, including a severe adverse event report of impaired gastric emptying with semaglutide 0.5 mg together with other serious gastrointestinal adverse events such as abdominal pain (upper and lower), intestinal obstruction, change of bowel habits, vomiting, and

---

[43] Hinnen D, *Glucagon-Like Peptide 1 Receptor Agonists for Type 2 Diabetes*, 30(3) Diabetes Spectr., 202–210 (August 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5556578/ (visited on 9/26/23).
[44] Deane AM et al., *Endogenous Glucagon-Like Peptide-1 Slows Gastric Emptying in Healthy Subjects, Attenuating Postprandial Glycemia*, 95(1) J Clinical Endo Metabolism, 225-221 (January 1, 2010), available at https://academic.oup.com/jcem/article/95/1/215/2835243 (visited on 9/26/23); American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (visited on 9/26/23).

diarrhea.[45]

65.     Two subjects in a semaglutide trial pool by Novo Nordisk reported moderate adverse events of impaired gastric emptying and both subjects permanently discontinued treatment due to the adverse events. Three subjects also reported mild adverse events of impaired gastric emptying in the semaglutide run-in period of trial 4376. The cardiovascular outcomes trials included two cases of gastroparesis with the first subject being diagnosed with severe gastroparesis after one month in the trial and second subject being diagnosed with gastroparesis after approximately two months in the trial.

66.     A study published in 2017 evaluated the effect of GLP-1RAs on gastrointestinal tract motility and residue rates and explained that "GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region." The study authors concluded that the GLP-1RA drug liraglutide "exhibited gastric-emptying delaying effects" and "the drug also inhibited duodenal and small bowel movements at the same time."[46]

67.     Another study in 2017 reviewed the survey results from 10,987 patients and 851 physicians and found that "GI-related issues were the top two patient-reported reasons for GLP-1RA discontinuation in the past 6 months, with 'Made me feel sick' as the most frequently reported reason (64.4%), followed by 'Made me throw up' (45.4%)."[47] As explained above, these are symptoms of gastroparesis.

68.     A 2019 study of the GLP-1RA drug dulaglutide identified adverse events for

---

[45] Marso, SP, et al., Semaglutide and Cardiovascular Outcomes in Patients with Type 2 Diabetes, N. Eng. J. Med. 375:1834-1844 (November 2016), available at https://www.nejm.org/doi/10.1056/NEJMoa1607141 (visited on 10/19/23).

[46] Nakatani Y et al., *Effect of GLP-1 receptor agonist on gastrointestinal tract motility and residue rates as evaluated by capsule endoscopy*, 43(5) Diabetes & Metabolism, 430-37 (October 2017), available at https://www.sciencedirect.com/science/article/pii/S1262363617301076 (visited on 9/26/23).

[47] Sikirica M et al., *Reasons for discontinuation of GLP1 receptor agonists: data from a real-world cross-sectional survey of physicians and their patients with type 2 diabetes*, 10 Diabetes Metab. Syndr. Obes., 403-412 (September 2017), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5630073/

impaired gastric emptying and diabetic gastroparesis.

69.    In August of 2020, medical literature advised that some "patients do not know they have diabetic gastroparesis until they are put on a glucagon-like peptide 1 (GLP-1) receptor agonist such as ... semaglutide ... to manage their blood glucose." The article went on to explain that "[t]his class of drugs can exacerbate the symptoms of diabetic gastroparesis. ... Thus, GLP-1 receptor agonist therapy is not recommended for people who experience symptoms of gastroparesis."[48]

70.    In a September 2020 article funded and reviewed by Novo Nordisk, scientists affiliated with Novo Nordisk reported on two global clinical trials that evaluated the effect of semaglutide in patients with cardiovascular events and diabetes. More patients permanently discontinued taking oral semaglutide (11.6%) than placebo (6.5%) due to adverse events. The most common adverse events associated with semaglutide were nausea (2.9% with semaglutide versus 0.5% with placebo), vomiting (1.5% with semaglutide versus 0.3% with placebo), and diarrhea (1.4% with semaglutide versus 0.4% with placebo). Injectable semaglutide had a discontinuation rate of 11.5-14.5 (versus 5.7-7.6% with placebo) over a two-year period. The authors acknowledged the potential for severe gastrointestinal events, warning that "[f]or patients reporting severe adverse gastrointestinal reactions, it is advised to monitor renal function when initiating or escalating doses of oral semaglutide." For patients with other comorbidities, the study warned that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs." The study further identified as one "key clinical take-home point" that "patients should be made aware of the occurrence of gastrointestinal adverse events with GLP-1RAs."[49]

---

[48] Young CF, Moussa M, Shubrook JH, *Diabetic Gastroparesis: A Review*, Diabetes Spectr. (2020), Aug; 33(3): 290–297, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7428659/ (visited on 9/26/23).
[49] Mosenzon O, Miller EM, & Warren ML, *Oral semaglutide in patients with type 2 diabetes and cardiovascular disease, renal impairment, or other comorbidities, and in older patients*, Postgraduate Medicine (2020), 132:sup2, 37-47, available at https://doi.org/10.1080/00325481.2020.1800286 (visited on 9/26/23).

71.    A July 2021 article funded and reviewed by Novo Nordisk considered 23 randomized control trials conducted across the United States, Japan, and China and concluded that "gastrointestinal disturbances" were "well-known" side effects associated with semaglutide use. When compared with placebos, the subcutaneous (injection) form of the drug induced nausea in up to 20% of patients (versus up to 8% on the placebo group), vomiting in up to 11.5% of patients (versus up to 3% in the placebo group) and diarrhea in up to 11.3% of patients (versus up to 6% in the placebo group). Overall, the percentage of patients experiencing adverse events that led to trial product discontinuation was greatest for gastrointestinal related adverse events, with some trials experiencing 100% discontinuation due to gastrointestinal related adverse events. The mean value of gastrointestinal related adverse events that led to discontinuation averaged 57.75%. The study acknowledges that while nausea and vomiting are unwanted side effects, "they may be partly responsible for aspects of the drug's efficacy[.]"[50]

72.    An October 2021 article in the Journal of Investigative Medicine ("JIM") concluded that because gastroparesis can be associated with several medications, "[i]t is crucial to identify the causative drugs as discontinuation of the drug can result in resolution of the symptoms[.]" In diabetics, making this determination can be particularly "tricky" because both diabetes and GLP-1RAs can cause delayed gastric emptying. As such, "the timeline of drug initiation and symptom onset becomes of the upmost importance." The authors reviewed two case reports (discussed below) and concluded that history taking and making an accurate diagnosis of diabetic gastroparesis versus medication-induced gastroparesis is critical.[51]

---

[50] Smits MM & Van Raalte DH (2021), *Safety of Semaglutide*, Front. Endocrinol., 07 July 2021, doi: 10.3389/fendo.2021.645563, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8294388/ (visited on 9/26/23).

[51] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 2324709621105919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23).

73.     Case Report #1 in JIM involved a 52-year-old female with long-standing (10 years) well-controlled, type 2 diabetes who had been taking weekly semaglutide injections approximately one month prior to the onset of gastroparesis symptoms. The patient was referred with a 7-month history of post-prandial epigastric pain, accompanied by fullness, bloating, and nausea. A gastric emptying study showed a 24% retention of isotope in the patient's stomach at four hours, indicative of delayed gastric emptying. The patient discontinued semaglutide and her symptoms resolved after six weeks. The case report authors concluded that "thorough history taking revealed the cause [of gastroparesis] to be medication induced."[52]

74.     Case Report #2 in JIM involved a 57-year-old female with a long-standing (16 years) type 2 diabetes who had been taking weekly dulaglutide injections (another GLP-1RA) for 15 months and suffering from abdominal bloating, nausea, and vomiting for 12 of those months. A gastric emptying study showed 35% retention of isotope in the patient's stomach at four hours, indicating delayed gastric emptying. After discontinuing dulaglutide, the patient experienced a gradual resolution of symptoms over a four-week period.[53]

75.     A June 2022 study reported GLP-1RA Mounjaro (tirzepatide) adverse events of vomiting, nausea, and "severe or serious gastrointestinal events."[54]

76.     An October 2022 study analyzed 5,442 GLP-1RA adverse gastrointestinal events. 32% were serious, including 40 deaths, 53 life-threatening conditions, and 772 hospitalizations. The primary events were nausea and vomiting. There were also adverse events for impaired gastric

---

[52] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23).
[53] Kalas MA, Galura GM, McCallum RW, *Medication-Induced Gastroparesis: A Case Report*, J Investig Med High Impact Case Rep. 2021 Jan-Dec; 9: 23247096211051919, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8529310/ (visited on 9/26/23).
[54] Jastreboff, *Tirzepatide Once Weekly for the Treatment of Obesity*, N Engl J Med, at 214 (June 4, 2022) (https://doi.org/10.1056/nejmoa2206038).

emptying.[55]

77.    A January 2023 meta-analysis of GLP-1RA (Mounjaro) adverse events reported high rates of nausea and vomiting.[56]

78.    In February 2023, a longitudinal study of GLP-1RA (dulaglutide) reported adverse events for nausea and vomiting, and one adverse event of impaired gastric emptying.[57]

79.    On March 28, 2023, a case study concluded that impaired gastric emptying is "a significant safety concern, especially since it is consistent with the known mechanism of action of the drug."[58]

80.    On June 29, 2023, the American Society of Anesthesiologists ("ASA") warned that patients taking semaglutide and other GLP-1RAs should stop the medication at least a week before elective surgery because these medications "delay gastric (stomach) emptying" and "the delay in stomach emptying could be associated with an increased risk of regurgitation and aspiration of food into the airways and lungs during general anesthesia and deep sedation." The ASA also warned that the risk is higher where patients on these medications have experienced nausea and vomiting.[59]

81.    News sources have identified the potential for serious side effects in users of

---

[55] Shu, *Gastrointestinal adverse events associated with semaglutide: A pharmacovigilance study based on FDA adverse event reporting system*, Front. Public Health (Oct. 20, 2022). (https://doi.org/10.3389%2Ffpubh.2022.996179).

[56] Mirsha, *Adverse Events Related to Tirzepatide*, J. of Endocrine Society (Jan. 26, 2023) (https://doi.org/10.1210%2Fjendso%2Fbvad016).

[57] Chin, *Safety and effectiveness of dulaglutide 0.75 mg in Japanese patients with type 2 diabetes in real-world clinical practice: 36 month postmarketing observational study*, J Diabetes Investig (Feb. 2023) (https://doi.org/10.1111%2Fjdi.13932).

[58] Klein, Semaglutide, delayed gastric emptying, and intraoperative pulmonary aspiration: a case report, Can J. Anesth (Mar. 28, 2023) (https://doi.org/10.1007/s12630-023-02440-3).

[59] American Society of Anesthesiologists, *Patients Taking Popular Medications for Diabetes and Weight Loss Should Stop Before Elective Surgery, ASA Suggests* (June 29, 2023), available at https://www.asahq.org/about-asa/newsroom/news-releases/2023/06/patients-taking-popular-medications-for-diabetes-and-weight-loss-should-stop-before-elective-surgery (visited on 9/26/23).

Ozempic, including gastroparesis, leading to hospitalization.[60] For example, NBC News reported in January 2023 that some Ozempic users were discontinuing use because their symptoms were unbearable, and one user said that five weeks into taking the medication she found herself unable to move off the bathroom floor because she had "vomited so much that [she] didn't have the energy to get up."[61] CNN reported in July that one Ozempic user diagnosed with gastroparesis vomits so frequently that she had to take a leave of absence from her teaching job.[62]

82.     A July 25, 2023, article in Rolling Stone magazine—"*Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*"—highlighted three patients who have suffered severe gastrointestinal related events, including gastroparesis, as a result of their use of GLP-1RAs. Patient 1 (female, age 37) reported incidents of vomiting multiple times per day and being unable to eat. The patient's physician diagnosed her with severe gastroparesis and concluded that her problems were caused and/or exacerbated by her use of a GLP-1RA medication. Patient 2 (female) used Ozempic for one year and reported incidents of vomiting, including multiple times per day. The patient's physician diagnosed her with severe gastroparesis related to her Ozempic use. Patient 3 (female, age 42) experienced severe nausea both during and after she discontinued use of a GLP-1RA. In a statement to Rolling Stone, Novo Nordisk acknowledged that "[t]he most

---

[60] Penny Min, *Ozempic May Cause Potential Hospitalizations*, healthnews (June 26, 2023), available at https://healthnews.com/news/ozempic-may-cause-potential-hospitalizations/ (visited on 9/26/23); Elizabeth Laura Nelson, *These Are the 5 Most Common Ozempic Side Effects, According to Doctors*, Best Life (April 3, 2023), available at https://bestlifeonline.com/ozempic-side-effects-news/ (visited on 9/26/23); Cara Shultz, *Ozempic and Wegovy May Cause Stomach Paralysis in Some Patients*, People (July 26, 2023), available at https://people.com/ozempic-wegovy-weight-loss-stomach-paralysis-7565833 (visited on 9/26/23); CBS News Philadelphia, *Popular weight loss drugs Ozempic and Wegovy may cause stomach paralysis, doctors warn* (July 23, 2023), available at https://www.cbsnews.com/philadelphia/news/weight-loss-drugs-wegovy-ozempic-stomach-paralysis/ (visited on 9/26/23).
[61] Bendix A, Lovelace B Jr., *What it's like to take the blockbuster drugs Ozempic and Wegovy, from severe side effects to losing 50 pounds*, NBC News (Jan. 29, 2023), available at https://www.nbcnews.com/health/health-news/ozempic-wegovy-diabetes-weight-loss-side-effects-rcna66493 (visited on 9/26/23).
[62] Brenda Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed*, CNN (July 25, 2023), available at https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis/index.html (visited on 9/26/23).

common adverse reactions, as with all GLP-1 RAs, are gastrointestinal related." Novo Nordisk further stated that while "GLP-1 RAs are known to cause a delay in gastric emptying, … [s]ymptoms of delayed gastric emptying, nausea and vomiting are listed as side effects." Novo Nordisk did not claim to have warned consumers about gastroparesis or other severe gastrointestinal issues.[63]

83.　　On July 25, 2023, CNN Health reported that patients taking Ozempic have been diagnosed "with severe gastroparesis, or stomach paralysis, which their doctors think may have resulted from or been exacerbated by the medication they were taking, Ozempic." Another patient taking Wegovy (semaglutide) suffered ongoing nausea and vomiting, which was not diagnosed, but which needed to be managed with Zofran and prescription probiotics.[64]

84.　　On July 26, 2023, a New York hospital published an article to its online health blog section "What You Need to Know About Gastroparesis" entitled "Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines." It was reported that a growing number of gastroparesis cases had been seen in people taking GLP-1RAs. The article noted that the weight-loss drugs can delay or decrease the contraction of muscles that mix and propel contents in the gastrointestinal tract leading to delayed gastric emptying. One concern raised was that patients and doctors often assume the symptoms of gastroparesis are reflux or other gastrointestinal conditions, meaning it may take a long time for someone to be diagnosed correctly.[65]

85.　　In an October 5, 2023, Research Letter published in the Journal of the American

---

[63] CT Jones, *Ozempic Users Report Stomach Paralysis from Weight Loss Drug: 'So Much Hell'*, Rolling Stone (July 25, 2023), available at https://www.rollingstone.com/culture/culture-news/ozempic-stomach-paralysis-weight-loss-side-effects-1234794601 (visited on 9/26/23).

[64] Brenca Goodman, *They took blockbuster drugs for weight loss and diabetes. Now their stomachs are paralyzed,* CNN Health (July 25, 2023), available at https://www.cnn.com/2023/07/25/health/weight-loss-diabetes-drugs-gastroparesis (last visited on 9/26/23).

[65] *Delayed Stomach Emptying Can Be Result of Diabetes or New Weight-Loss Medicines*, Montefiore Health Blog article (released July 26, 2023), available at https://www.montefiorenyack.org/health-blog/what-you-need-know-about-gastroparesis (last visited on 9/26/2023).

Medical Association ("JAMA"), the authors examined gastrointestinal adverse events associated with GLP-1RAs used for weight loss in clinical setting and reported that use of GLP-1RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis, gastroparesis, and bowel obstruction.[66] The study found that patients prescribed GLP-1RAs were at 4.22 times higher risk of intestinal obstruction and at 3.67 times higher risk of gastroparesis.

86.     The medical literature listed above is not a comprehensive list, and several other case reports have indicated that GLP-1RAs can cause gastroparesis and impaired gastric emptying.[67]

87.     Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae, but they ignored the causal association. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, medical literature, including the medical literature and case reports referenced above in this Complaint.

88.     On information and belief, Defendants not only knew or should have known that their GLP-1RAs cause delayed gastric emptying, resulting in risks of gastroparesis, but they may have sought out the delayed gastric emptying effect due to its association with weight loss. For example, a recent study published in 2023 notes that "it has been previously proposed that long-

---

[66] Mohit Sodhi, et al., *Risk of Gastrointestinal Adverse Events Associated with Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, JAMA (published online October 5, 2023), available at https://jamanetwork.com/journals/jama/fullarticle/2810542 (last visited 10/19/23).
[67] Cure, *Exenatide and Rare Adverse Events*, N. Eng. J. Med. (May 1, 2008) (https://doi.org/10.1056/nejmc0707137); Rai, *Liraglutide-induced Acute Gastroparesis*, Cureus (Dec. 28, 2018) (https://doi.org/10.7759%2Fcureus.3791); Guo, *A Post Hoc Pooled Analysis of Two Randomized Trials*, Diabetes Ther (2020) (https://doi.org/10.1007%2Fs13300-020-00869-z); Almustanyir, *Gastroparesis With the Initiation of Liraglutide: A Case Report*, Cureus (Nov. 28, 2020) (https://doi.org/10.7759/cureus.11735); Ishihara, *Suspected Gastroparesis With Concurrent Gastroesophageal Reflux Disease Induced by Low-Dose Liraglutide*, Cureus (Jul. 16, 2022) (https://doi.org/10.7759/cureus.26916); Preda, *Gastroparesis with bezoar formation in patients treated with glucagon-like peptide-1 receptor agonists: potential relevance for bariatric and other gastric surgery*, BJS Open (Feb. 2023) (https://doi.org/10.1093%2Fbjsopen%2Fzrac169).

acting GLP-1RAs could hypothetically contribute to reduced energy intake and weight loss by delaying GE [gastric emptying,]" and the study authors suggested "further exploration of peripheral mechanisms through which s.c. semaglutide, particularly at a dose of 2.4. mg/week, could potentially contribute to reduced food and energy intake."[68]

.   **Defendants Failed to Warn of the Risk of Gastroparesis from Ozempic and Trulicity**

89.    The Prescribing Information for Ozempic (the "Ozempic label") discloses "Warnings and Precautions" and "Adverse Reactions" but does not adequately warn of the risk of gastroparesis and its sequalae.[69]

90.    The Ozempic label lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic patients, but it does not include these adverse reactions in its "Warnings and Precautions" section, nor does it warn that these adverse reactions are symptoms of more severe conditions, including gastroparesis. In fact, gastroparesis is not mentioned at all in the Ozempic label.

91.    Instead of properly disclosing gastrointestinal risks, the Ozempic label discloses delayed gastric emptying in the "Drug Interaction" section and notes that Ozempic "may impact absorption of concomitantly administered oral medications." Similarly, in the "Mechanism of Action" section, the Ozempic label minimizes gastrointestinal risks by stating that "[t]he mechanism of blood glucose lowering also involves a minor delay in gastric emptying in the early postprandial phase." These statements only describe the drug's mechanism of action and do not disclose gastroparesis as a **_risk_** of taking Ozempic, nor do they disclose gastroparesis as a chronic condition that can result as a consequence of taking Ozempic.

---

[68] Jensterle M et al., _Semaglutide delays 4-hour gastric emptying in women with polycystic ovary syndrome and obesity_, 25(4) Diabetes Obes. Metab. 975-984 (April 2023), available at https://dom-pubs.onlinelibrary.wiley.com/doi/epdf/10.1111/dom.14944 (visited on 9/26/23).
[69] https://www.novo-pi.com/ozempic.pdf

92.     Similarly, Novo Nordisk's main promotional website for Ozempic (ozempic.com) includes a variety of information about the benefits of Ozempic relating to blood sugar, cardiovascular health, and weight loss, as well as "Important Safety Information" – however, Novo Nordisk does not disclose the risk of gastroparesis within the "Important Safety Information" section of their promotional website.[70]

93.     In January 2020, Novo Nordisk removed the "Instructions" portion from Section 17 "Patient Counseling Information" of the Ozempic label, which had instructed prescribers to "[a]dvise patients that the most common side effects of Ozempic are nausea, vomiting, diarrhea, abdominal pain and constipation." These instructions were present in the 2017 and 2019 labels.

94.     The 2017 and 2019 labels for Ozempic also instructed physicians that "vomiting … decreases over time in the majority of patients." As a result, a physician would not only fail to appreciate vomiting as a symptom of gastroparesis but, even worse, would encourage a patient to continue using Ozempic despite symptoms of gastroparesis.

95.     In its section on "Females and Males of Reproductive Potential," the Ozempic label advises female users to discontinue Ozempic at least 2 months before a planned pregnancy due to the long washout period for semaglutide. This demonstrates that Novo Nordisk knew or should have known that symptoms, such as continuous and violent vomiting, can linger long after the drugs are discontinued and shows the need to warn of gastroparesis and its sequelae.

96.     From the date Novo Nordisk received FDA approval to market Ozempic until the present time, Novo Nordisk made, distributed, marketed, and/or sold Ozempic without adequate warning to Plaintiff's prescribing physician(s) and/or Plaintiff that Ozempic was causally associated with and/or could cause gastroparesis and its sequelae.

---

[70] *See* Ozempic.com (visited on 10/16/23).

97.    The Prescribing Information for Trulicity (the "Trulicity label") discloses "Warnings and Precautions" and "Adverse Reactions" but does not adequately warn of the risk of gastroparesis and its sequalae.[71]

98.    The Trulicity label lists nausea, vomiting, diarrhea, abdominal pain, and decreased appetite as the most common adverse reactions reported in Trulicity patients, but it does not include these adverse reactions in its "Warnings and Precautions" section, nor does it warn that these adverse reactions are symptoms of more severe conditions, including gastroparesis. While the Warnings and Precautions section indicates that "Use of TRULICITY may be associated with gastrointestinal adverse reactions, sometime severe," the warning is lacking in urgency and specificity.[72]

99.    At all times, Trulicity's label has indicated that Trulicity delays gastric emptying and that the delay in gastric emptying "diminishes with subsequent doses." However, Trulicity's label has never warned that Trulicity can cause gastroparesis or its sequelae.

100.    Instead of properly disclosing gastrointestinal risks, the label for Trulicity encourages prescribing physicians and patients to ignore the signs of gastroparesis and continue therapy with Trulicity because the Drug Interactions and Clinical Pharmacology sections of the Trulicity label state that the delayed gastric emptying caused by Trulicity "is largest after the first dose and diminishes with subsequent doses."[73]

101.    Similarly, Eli Lilly's main promotional website for Trulicity (trulicity.com) includes a variety of information about the benefits of Trulicity relating to blood sugar,

---

[71] *See* Trulicity Label (revised Nov. 2022), available at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/125469s051lbl.pdf (last visited Nov. 15, 2023).
[72] *See* Trulicity Label (revised Nov. 2022), available at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/125469s051lbl.pdf (last visited Nov. 15, 2023).
[73] *See* Trulicity Label (revised Nov. 2022), available at
https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/125469s051lbl.pdf (last visited Nov. 15, 2023).

cardiovascular health, and weight loss, and includes a section about "Side Effects" and a sidebar containing a "SAFETY SUMMARY WITH WARNINGS." However, Eli Lilly does not disclose the risk of gastroparesis within either the "Side Effects" or "SAFETY SUMMARY WITH WARNINGS" sections of the website.[74]

102.    Nothing in the Trulicity label has ever disclosed gastroparesis as a *risk* of taking Trulicity.

103.    None of Defendants' other advertising or promotional materials for Ozempic or Trulicity warned prescription providers or the general public of the risks of gastroparesis and its sequalae.

104.    Defendants knew or should have known of the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae. Defendants' actual and constructive knowledge derived from their clinical studies, case reports, and the medical literature, including the medical literature and case reports referenced in this Complaint.

105.    Upon information and belief, Defendants ignored the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae.

106.    Defendants' failure to disclose information that they possessed regarding the causal association between the use of GLP-1RAs and the risk of developing gastroparesis and its sequelae rendered the warnings for Ozempic and Trulicity inadequate.

107.    On information and belief, as a result of Defendants' inadequate warnings, the medical community at large, and Plaintiff's prescribing physician in particular, were not aware that Ozempic and Trulicity can cause gastroparesis, nor were they aware that "common adverse reactions" listed on the labels might be sequelae of gastroparesis.

---

[74] *See* Trulicity.com (last visited Nov. 15, 2023).

2

108.    On information and belief, had Defendants adequately warned Plaintiff's prescribing physician(s) that Ozempic and Trulicity are causally associated with gastroparesis and its sequelae, then the physician's prescribing decision would have changed by not prescribing Ozempic or Trulicity, or by monitoring Plaintiff's health for symptoms of gastroparesis and discontinuing Ozempic and Trulicity when the symptoms first started.

109.    By reason of the foregoing acts and omissions, Plaintiff was and still is caused to suffer from gastroparesis and its sequelae, which resulted in severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

**FIRST CAUSE OF ACTION**
**(NEGLIGENT FAILURE TO WARN**
**AGAINST ALL DEFENDANTS)**

110.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

111.    California law imposes a duty on producers, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when producing, manufacturing, distributing, leasing, and selling their products.

112.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Trulicity that were used by Plaintiff.

113.    Ozempic and Trulicity were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the

condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

114.    At all relevant times, and at the times Ozempic and Trulicity left Defendants' control, Defendants knew or should have known that Ozempic and Trulicity were unreasonably dangerous because they did not adequately warn of the risk of gastroparesis and its sequelae, especially when used in the form and manner as provided by Defendants.

115.    Despite the fact that Defendants knew or should have known that Ozempic and Trulicity caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Trulicity to consumers, including Plaintiff, without adequate warnings.

116.    Despite the fact that Defendants knew or should have known that Ozempic and Trulicity caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Trulicity to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

117.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

118.    At all relevant times, given their increased safety risks, Ozempic and Trulicity were not fit for the ordinary purpose for which they were intended.

119.    At all relevant times, given their increased safety risks, Ozempic and Trulicity did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

120.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic and Trulicity into the stream of commerce, including a duty to assure that

the products would not cause users to suffer unreasonable, dangerous injuries, such as gastroparesis and its sequelae.

121.     At all relevant times, Plaintiff was using Ozempic and Trulicity for the purposes and in a manner normally intended—namely, Ozempic as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, and Trulicity as an aid to weight loss in adults and teens with obesity or excess weight and at least one weight-related comorbid condition.

122.     The Ozempic and Trulicity designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the products created a risk of serious and dangerous injuries, including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

123.     The Ozempic and Trulicity designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including gastroparesis and its sequalae, as well as other severe and permanent health consequences from Ozempic and Trulicity, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic and Trulicity.

124.     The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Trulicity, including the increased risk of gastroparesis and its sequelae.

125.    The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

126.    The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic and Trulicity.

127.    The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

128.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Trulicity, including the increased risk of gastroparesis and its sequelae.

129.    Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

130.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

131.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

132.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned

3

of the increased risks of gastroparesis and its sequalae, which are causally associated with Ozempic and Trulicity, then the prescribing physician(s) would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and Trulicity so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

133.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, the prescribing physician(s) would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Trulicity so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

134.    If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae, which are causally associated with Ozempic and Trulicity, then Plaintiff would not have used Ozempic and Trulicity and/or suffered from gastroparesis and its sequelae.

135.    If Plaintiff had been warned that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequalae, then Plaintiff would not have used Ozempic and Trulicity and/or suffered gastroparesis and its sequelae.

136.    If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae, which is causally associated with Ozempic and Trulicity, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic and Trulicity.

137.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic and Trulicity due to the risks of gastroparesis and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's

prescribing physician(s) would not have prescribed Ozempic and Trulicity.

138.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic and Trulicity.

139.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

140.    Defendants' inadequate warnings for Ozempic and Trulicity were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

141.    Said inadequate warnings for Defendants' drugs Ozempic and Trulicity were a substantial factor in causing Plaintiff's injuries.

142.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

143.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SECOND CAUSE OF ACTION: (STRICT PRODUCTS LIABILITY – FAILURE TO WARN

**AGAINST ALL DEFENDANTS)**

144.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

145.    At all times mentioned herein, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Ozempic and Trulicity that were used by Plaintiff.

146.    Ozempic and Trulicity were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

147.    At all relevant times, and at the times Ozempic and Trulicity left Defendants' control, Defendants knew or should have known that Ozempic and Trulicity were unreasonably dangerous because they did not adequately warn of the risk of gastroparesis and its sequelae, especially when used in the form and manner as provided by Defendants.

148.    Despite the fact that Defendants knew or should have known that Ozempic and Trulicity caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell Ozempic and Trulicity to consumers, including Plaintiff, without adequate warnings.

149.    Despite the fact that Defendants knew or should have known that Ozempic and Trulicity caused unreasonably dangerous injuries, Defendants continued to market Ozempic and Trulicity to prescribing physicians, including Plaintiff's prescribing physician(s), without adequate warnings.

150.    Defendants knew or should have known that consumers such as Plaintiff

3

would foreseeably suffer injury as a result of their failure to provide adequate warnings, as set forth herein.

151.    At all relevant times, given their increased safety risks, Ozempic and Trulicity were not fit for the ordinary purpose for which they were intended.

152.    Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, sale, and/or distribution of Ozempic and Trulicity into the stream of commerce, including a duty to assure that the products would not cause users to suffer unreasonable, dangerous injuries, such as gastroparesis and its sequelae, and a duty to adequately warn Plaintiff of potentially dangerous side effects.

153.    At all relevant times, Plaintiff was using Ozempic and Trulicity for the purposes and in a manner normally intended.

154.    At all relevant times, there existed unequal knowledge between the Defendants and the Plaintiff regarding the risk of Ozempic and Trulicity.

155.    The Ozempic and Trulicity designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the products created a risk of serious and dangerous injuries, including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of said risk.

156.    The Ozempic and Trulicity designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of

3

the risks of serious side effects, including gastroparesis and its sequalae, as well as other severe and permanent health consequences from Ozempic and Trulicity, they failed to provide adequate warnings to users and/or prescribers of the products, and continued to improperly advertise, market and/or promote their products, Ozempic and Trulicity.

157. The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Trulicity, including the increased risk of gastroparesis and its sequelae.

158. The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

159. The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn of all possible adverse side effects concerning the failure and/or malfunction of Ozempic and Trulicity.

160. The labels for Ozempic and Trulicity were inadequate because they did not warn and/or adequately warn of the severity and duration of adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects.

161. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic and Trulicity, including the increased risk of gastroparesis and its sequelae.

162. Communications made by Defendants to Plaintiff and Plaintiff's prescribing physician(s) were inadequate because Defendants failed to warn and/or adequately warn that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including

gastroparesis and its sequelae.

163.    Plaintiff had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and Plaintiff's reliance upon Defendants' warnings was reasonable.

164.    Plaintiff's prescribing physician(s) had no way to determine the truth behind the inadequacies of Defendants' warnings as identified herein, and his/her/their reliance upon Defendants' warnings was reasonable.

165.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risks of gastroparesis and its sequalae, which are causally associated with Ozempic and Trulicity, then the prescribing physician(s) would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and Trulicity so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

166.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, the prescribing physician(s) would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Trulicity so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

167.    If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae, which are causally associated with Ozempic and Trulicity, then Plaintiff would not have used Ozempic and Trulicity and/or suffered from gastroparesis and its sequelae.

168.    If Plaintiff had been warned that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequalae, then Plaintiff

would not have used Ozempic and Trulicity and/or suffered gastroparesis and its sequelae.

169.    If Plaintiff had been warned of the increased risks of gastroparesis and its sequelae, which is causally associated with Ozempic and Trulicity, then Plaintiff would have informed Plaintiff's prescribers that Plaintiff did not want to take Ozempic and Trulicity.

170.    Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician(s) that Plaintiff did not want to take Ozempic and Trulicity due to the risks of gastroparesis and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Trulicity.

171.    By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of unreasonably dangerous products, Ozempic and Trulicity.

172.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

173.    Defendants' inadequate warnings for Ozempic and Trulicity were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

174.    Said inadequate warnings for Defendants' drugs Ozempic and Trulicity were a substantial factor in causing Plaintiff's injuries.

175.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment,

3

monitoring and/or medications, and fear of developing any of the above-named health consequences.

176.    As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**THIRD CAUSE OF ACTION**
**(BREACH OF EXPRESS WARRANTY**
**AGAINST ALL DEFENDANTS)**

177.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

178.    At all relevant times, Defendants expressly warranted to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic and Trulicity was safe as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

179.    The aforementioned express warranties were made to Plaintiff and Plaintiff's prescribing physician(s) by way of Ozempic's and Trulicity's labels, website, advertisements, promotional materials, and through other statements.

180.    As a result of Defendants' express warranties, Plaintiff's prescribing physician(s) was induced to prescribe Ozempic and Trulicity to Plaintiff, and Plaintiff was induced to use Ozempic and Trulicity.

181.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic and Trulicity based upon their express warranties.

3

182.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic and Trulicity based upon their express warranties.

183.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity were unreasonably dangerous because of their increased risk of gastroparesis and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

184.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety.

185.    The unreasonably dangerous characteristics of Ozempic and Trulicity were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

186.    The unreasonably dangerous characteristics of Ozempic and Trulicity were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physicians as to the drugs' characteristics.

187.    At the time Ozempic and Trulicity left Defendants' control, Ozempic and Trulicity did not conform to Defendants' express warranties because Ozempic and Trulicity was not safe to use as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus, in that they were causally associated with increased risks of gastroparesis and its sequelae.

188.    The express warranties made by Defendants regarding the safety of Ozempic and Trulicity were made with the intent to induce Plaintiff to use the products and/or Plaintiff's prescribing physician(s) to prescribe the products.

189.    Defendants knew and/or should have known that by making the express warranties

3

to Plaintiff and/or Plaintiff's prescribing physician(s), it would be the natural tendency of Plaintiff to use Ozempic and Trulicity and/or the natural tendency of Plaintiff's prescribing physician(s) to prescribe Ozempic and Trulicity.

190.    Plaintiff and Plaintiff's prescribing physician(s), as well as members of the medical community, relied on the express warranties of Defendants identified herein.

191.    Had Defendants not made these express warranties, Plaintiff would not have used Ozempic and Trulicity and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Trulicity.

192.    Plaintiff's injuries and damages were directly caused by Defendants' breach of the aforementioned express warranties.

193.    Plaintiff's injuries and damages arose from a reasonably anticipated use of the products by Plaintiff.

194.    Accordingly, Defendants are liable as a result of their breach of express warranties to Plaintiff.

195.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

196.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of Defendants' Ozempic and Trulicity drugs.

197.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require

more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**FOURTH CAUSE OF ACTION**
**(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY-**
**AGAINST ALL DEFENDANTS)**

198.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

199.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic and Trulicity drugs used by Plaintiff.

200.    Ozempic and Trulicity were expected to and did reach the usual consumers, handlers, and persons encountering said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by the Defendants.

201.    At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's prescribing physician(s), and the medical community that Ozempic and Trulicity were of merchantable quality and safe and fit for their ordinary purpose.

202.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity were unreasonably dangerous because of their increased risk of gastroparesis and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

203.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety.

4

204.    At the time Ozempic and Trulicity left Defendants' control, Ozempic and Trulicity did not conform to Defendants' implied warranty and were unfit for their ordinary purpose because Defendants failed to provide adequate warnings of the drugs' causal association with increased risk of gastroparesis and its sequelae.

205.    At all relevant times, Defendants reasonably anticipated and expected that prescribing physicians, such as Plaintiff's prescribing physician(s), would recommend, prescribe and/or dispense Ozempic and Trulicity for use by their patients to improve glycemic control in adults with type 2 diabetes.

206.    At all relevant times, Defendants reasonably anticipated and expected that individuals, such as Plaintiff, would use and/or consume Ozempic and Trulicity for their ordinary purposes.

207.    Despite the fact that Defendants knew or should have known that Ozempic and Trulicity cause unreasonably dangerous injuries, such as gastroparesis and its sequelae, Defendants continued to market, distribute, and/or sell Ozempic and Trulicity to consumers, including Plaintiff, without adequate warnings.

208.    The unreasonably dangerous characteristics of Ozempic and Trulicity were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

209.    The unreasonably dangerous characteristics of Ozempic and Trulicity were beyond that which would be contemplated by Plaintiff's prescribing physician(s), with the ordinary knowledge common to prescribing physicians as to the drugs' characteristics.

210.    Plaintiff reasonably relied on Defendants' implied warranties of merchantability relating to Ozempic's and Trulicity's safety and efficacy.

4

211.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ozempic and Trulicity were of merchantable quality and safe and fit for their intended uses.

212.    Upon information and belief Plaintiff's prescribing physician(s) relied on Defendants' implied warranties of merchantability and fitness for the ordinary use and purpose relating to Ozempic and Trulicity.

213.    Upon information and belief Plaintiff's prescribing physician(s), reasonably relied upon the skill and judgment of Defendants as to whether Ozempic and Trulicity were of merchantable quality and safe and fit for their intended use.

214.    Had Defendants not made these implied warranties, Plaintiff would not have used Ozempic and Trulicity and/or, upon information and belief, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Trulicity, and/or would have altered their prescribing practices and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic and Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

215.    Defendants herein breached the aforesaid implied warranties of merchantability because the drugs Ozempic and Trulicity were not fit for their intended purposes.

216.    Defendants' breaches of implied warranties of merchantability were a substantial factor in causing Plaintiff's injuries.

217.    As a result of the foregoing breaches, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment,

monitoring and/or medications, and fear of developing any of the above-named health consequences.

218.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## FIFTH CAUSE OF ACTION
## (FRAUDULENT CONCEALMENT
## AGAINST ALL DEFENDANTS)

219.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

220.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Trulicity, which were used by Plaintiff as hereinabove described.

221.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity had not been adequately and/or sufficiently tested for safety.

222.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity were unreasonably dangerous because of the increased risk of gastroparesis and its sequelae, especially when the drugs were used in the form and manner as provided by Defendants.

223.    Defendants had a duty to disclose material information about Ozempic and Trulicity to Plaintiff and Plaintiff's prescribing physician(s), namely that Ozempic and Trulicity are causally associated with increased risk of gastroparesis and its sequelae, because Defendants have superior knowledge of the drugs and their dangerous side effects, this material information

is not readily available to Plaintiff or Plaintiff's prescribing physician(s) by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician(s) would act on the basis of mistaken knowledge.

224. Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing physician(s), Plaintiff, the medical and healthcare community, and the general public this material information.

225. Although the Ozempic and Trulicity labels lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic and Trulicity patients, they do not mention gastroparesis as a risk of taking Ozempic and Trulicity, nor do they disclose gastroparesis as a chronic condition that can result as a consequence of taking Ozempic and Trulicity.

226. Defendants' promotional websites for Ozempic and Trulicity similarly do not disclose that Ozempic and Trulicity are causally associated with increased risk of gastroparesis and its sequelae.

227. Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), and adult type 2 diabetes patients and those seeking treatment for weight loss, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic and Trulicity for treatment of type 2 diabetes and weight loss.

228. Defendants knew or should have known that Plaintiff's prescribing physician(s) would prescribe, and Plaintiff would use Ozempic and Trulicity without the awareness of the risks of serious side effects, including gastroparesis and its sequelae.

229. Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way

to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic and Trulicity, as set forth herein.

230.    Upon information and belief, Plaintiffs prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, and prescribe Ozempic and Trulicity.

231.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of gastroparesis and its sequelae causally associated with Ozempic and Trulicity, they would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate information regarding the increased risk of gastroparesis and its sequelae causally associated with Ozempic and Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

232.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, they would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

233.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to purchase and/or consume Ozempic and Trulicity.

234.    Had Plaintiff been informed of the increased risks causally associated with Ozempic and Trulicity, Plaintiff would not have used Ozempic and Trulicity and/or suffered gastroparesis and its sequelae.

235.    Defendants' fraudulent concealments were a substantial factor in causing Plaintiff's injuries.

236.    As a direct and proximate result of the above stated omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

237.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

**SIXTH CAUSE OF ACTION**
**(FRAUDULENT MISREPRESENTATION**
**AGAINST ALL DEFENDANTS)**

238.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

239.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Trulicity, which were used by Plaintiff as hereinabove described.

240.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity had not been adequately and/or sufficiently tested for safety.

4

241.     At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Trulicity, including gastroparesis and its sequelae.

242.     At all relevant times, Defendants knew or should have known that Ozempic and Trulicity were not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given their increased risk of gastroparesis and its sequelae.

243.     Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic and Trulicity.

244.     Defendants represented affirmatively and by omission on television advertisements and on the labels of Ozempic and Trulicity that Ozempic and Trulicity were a safe and effective drug for treatment of adults with type 2 diabetes and to aid weight loss in adults and teens with obesity or excess weight and at least one weight-related comorbid condition, despite being aware of increased risks of gastroparesis and its sequelae causally associated with using Ozempic and Trulicity.

245.     Defendants were aware or should have been aware that its representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

246.     Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician(s), adult type 2 diabetes patients and those seeking treatment

for weight loss, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic and Trulicity for treatment of type 2 diabetes and to aid weight loss.

247.    Upon information and belief that Plaintiff's prescribing physician(s) had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Ozempic and Trulicity, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff's prescribing physician(s) had no way to know were omitted.

248.    Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and Trulicity to Plaintiff.

249.    Upon information and belief, had Plaintiff's prescribing physician(s) been informed of the increased risk of gastroparesis and its sequelae causally associated with Ozempic and Trulicity, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate information regarding safety of Ozempic and Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

250.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, they would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Trulicity so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

4

251.    Plaintiff had no way to determine the truth behind Defendant's false and/or misleading statements, concealments and omissions surrounding Ozempic and Trulicity, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

252.    Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to accept, purchase and/or consume Ozempic and Trulicity.

253.    Had Plaintiff been told of the increased risk of gastroparesis and its sequelae causally associated with Ozempic and Trulicity, Plaintiff would not have used Ozempic and Trulicity and/or suffered gastroparesis and its sequelae.

254.    Had Plaintiff been told of the lack of sufficient and/or appropriate testing of Ozempic and Trulicity for safety risks, including gastroparesis and its sequelae, Plaintiff would not have used Ozempic and Trulicity and/or suffered gastroparesis and its sequelae.

255.    As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

256.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related

expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SEVENTH CAUSE OF ACTION
## (NEGLIGENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS)

257.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

258.    At all relevant times, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic and Trulicity, which were used by Plaintiff as hereinabove described.

259.    At all relevant times, Defendants knew or should have known that Ozempic and Trulicity had not been adequately and/or sufficiently tested for safety.

260.    At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic and Trulicity, including gastroparesis and its sequelae.

261.    Defendants had a duty to disclose material information about Ozempic and Trulicity to Plaintiff and Plaintiff's prescribing physician(s) that Ozempic and Trulicity are causally associated with increased risk of gastroparesis and its sequelae, because Defendants held a special expertise with respect to Ozempic and Trulicity, Plaintiff, as a user of Ozempic and Trulicity, had a special relationship of trust with Defendants, and Defendants knew that their statements regarding the risks causally associated with Ozempic and Trulicity would be relied on by Ozempic and Trulicity users.

262.    Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community at large, and the general public

regarding the safety and/or efficacy of Ozempic and Trulicity.

263.    Defendants represented affirmatively and by omission on television advertisements and on the labels of Ozempic and Trulicity that Ozempic was a safe and effective drug for treatment of adults with type 2 diabetes and that Weight loss was a safe and effective drug for treatment of adults and teens with obesity or excess weight and at least one weight-related comorbid condition, despite being aware of increased risks of gastroparesis and its sequelae causally associated with using Ozempic and Trulicity.

264.    Defendants were aware or should have been aware that their representations were false or misleading and/or knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician(s), the medical and healthcare community, and the general public.

265.    Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic and Trulicity, as set forth herein.

266.    Upon information and belief that Plaintiff's prescribing physician(s) justifiably relied on Defendants' material misrepresentations, including the omissions contained therein, when making the decision to prescribe Ozempic and Trulicity to Plaintiff.

267.    Upon information and belief, had Plaintiff's prescribing physician(s) been warned of the increased risk of gastroparesis and its sequelae causally associated with Ozempic and Trulicity, Plaintiff's prescribing physician(s) would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate information regarding safety of Ozempic and Trulicity to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

268.    Upon information and belief, had Plaintiff's prescribing physician(s) been told that Ozempic and Trulicity had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, they would not have prescribed Ozempic and Trulicity and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic and Trulicity so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic and Trulicity.

269.    Plaintiff reasonably relied on the false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

270.    Had Plaintiff been told of the increased risk of gastroparesis and its sequelae causally associated with Ozempic and Trulicity, Plaintiff would not have used Ozempic and Trulicity and/or suffered gastroparesis and its sequelae.

271.    Defendants' misrepresentations and omissions of material facts amount to willful, wanton, and/or reckless conduct.

272.    As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

273.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related

expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## EIGHTH CAUSE OF ACTION
## (VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES ACT
## UNDER N.M. Stat. Ann. § 57-12-1 et seq
## AGAINST ALL DEFENDANTS)

274.    Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

275.    Defendants deliberately misrepresented the safety of Ozempic and Trulicity and concealed the risks attendant to the use of Ozempic and Trulicity. Through their misrepresentations, Defendants' conduct had the tendency or capacity to deceive, and affected the decisions of consumers, particularly Plaintiff and Plaintiff's prescribing physician(s), to purchase, prescribe and use Ozempic and Trulicity, and to exclude the option of not using Ozempic and Trulicity for treatment.

276.    Defendants represented affirmatively and by omission on television advertisements and on the labels of Ozempic and Trulicity that they were safe and effective drugs for treatment of adults with type 2 diabetes, despite being aware of increased risks of gastroparesis and its sequelae causally associated with using Ozempic and Trulicity.

277.    All Defendants, while engaged in the conduct and practices identified above, committed one or more violations of state laws related to unfair or deceptive acts or practices, including but not limited to, the following:

.    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Ozempic and Trulicity;

.    Representing that Ozempic and Trulicity have sponsorship, approval,

5

characteristics, ingredients, uses, benefits, or qualities that they do not have;

.    Representing that Defendants' authors, key opinion leaders, consultants, and speakers do not have a sponsorship, approval, status, affiliation, or connection that they do have;

.    Representing that Ozempic and Trulicity are of a particular standard, quality, or grade;

.    Concealing information that gastroparesis is a risk of taking Ozempic and Trulicity and a chronic condition that can result as a consequence of taking Ozempic and Trulicity;

.    Concealing information that Ozempic and Trulicity had not been adequately and/or sufficiently tested for safety;

.    Engaging in other fraudulent or deceptive conduct which creates the likelihood of confusion or of misunderstanding, as alleged in this Complaint.

278.    As a result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

279.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

5

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

3.    Awarding Plaintiff the costs of these proceedings; and

4.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Dated: July 25, 2025                              RESPECTFULLY SUBMITTED,

*/s/ Jonathan M. Sedgh*
Jonathan M. Sedgh
Morgan & Morgan
199 Water Street, Suite 1500
New York, NY 10038
Phone: (212) 738-6839
*jsedgh@forthepeople.com*

Nicole Lovett
Morgan & Morgan
201 N Franklin St, 7th Floor
Tampa, FL 33602
Phone: (813) 275-5263
Fax: (813) 222-2455

5

*nlovett@forthepeople.com*

*Attorneys for Plaintiff*